IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:06-CV-132-D

| | |
|---|---|
| CHERRY ADKINS, | ) |
| Plaintiff/Claimant, | ) |
| | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings. Claimant Cherry Adkins seeks judicial review of the Commissioner's denial of her application for Disability Insurance Benefits (DIB). After a thorough review of the record and consideration of the briefs submitted by counsel, it is recommended that Claimant's Motion for Judgment on the Pleadings [DE-12] be granted, Defendant's Motion for Judgment on the Pleadings [DE-16] be denied, and that the case be remanded to the Commissioner for further proceedings.

## STATEMENT OF THE CASE

On May 21, 2003, Claimant filed an application for DIB. She claimed that she became disabled as of July 15, 2001 due to a severe arthritis in her neck and back, blood clots, internal bleeding, neck and back pain, and numbness in her hands and arms. Claimant's application was denied initially and upon reconsideration. Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), which took place on June 29, 2004. After the hearing, on September 28, 2004, the ALJ issued a decision denying plaintiff's claims. The Appeals Council denied Claimant's request for review on July 13,

2006, rendering the ALJ's decision a "final decision" for purposes of judicial review. See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

I.   **The Standard of Review and Social Security Framework**

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); see also 42 U.S.C. § 405(g) (2006). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

This court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in determining whether substantial evidence supports the Commissioner's decision, the court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and

rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments which significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se.

If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity (RFC) is assessed to determine if the claimant can perform his or her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience, and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert (VE), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges the following errors: (1) improper evaluation and weight given to treating and non-treating physicians' opinions; (2) failure by the ALJ to perform a proper credibility assessment; and (3) improper hypothetical posed to the VE.

## II. The ALJ's Findings

In making the decision in this case, the ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920, and found that Claimant had not engaged in substantial gainful activity since her alleged onset date. (R. 16). Then, the ALJ proceeded to step two to determine whether Claimant had a "severe" impairment or combination of impairments which significantly limited her from performing basic work activities. See 20 C.F.R. §§ 404.1520(b) and 416.920(b). The ALJ found that Claimant suffered from the severe impairments of degenerative disc disease and diabetes mellitus. (R. 22). However, at step three the ALJ determined that Claimant's impairments were not severe enough to meet or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. (R. 22). Next, the ALJ determined Claimant's RFC by considering all of her subjective complaints and reviewing her medical records, and concluded that she had the ability to perform a significant range of sedentary work activity. (Id.). At step four, the ALJ found that Claimant was not able to return to her past relevant work. (R. 23). At step five, the ALJ determined that although Claimant could not return to her past relevant work, she could perform the work of a surveillance system monitor or a dispatcher. (R. 24). As a result, the ALJ found that Claimant was not under a "disability," as defined in the Social Security Act, at any time prior to the date of his decision. (Id.).

## III. The Administrative Hearing

### A. Claimant's Testimony at the Administrative Hearing

Claimant testified at her administrative hearing. (R. 292-310). Claimant was 47 years old at the time of the hearing. (R. 292). She completed the eleventh grade and lives with her husband who works as the manager of a packaging warehouse. (R. 292-93). In additional to her husband's income, Claimant also receives a royalty check of $200 each month for mineral rights in Montana. (R. 293-94). Claimant has not worked since her alleged onset date in July 2001. (R. 294). Claimant last worked at Food Lion watering flowers for about one hour each day. (Id.). She left this job because the work required her to do a lot of bending and pulling on the water hose and it wasn't worth her time for only one hour of work each day. (R. 294-95).

Claimant does not feel she is able to work because of the pain she experiences. (R. 295). Claimant testified that she has tremendous pain when sitting or standing for long periods of time. (Id.). The pain is in her neck, shoulders, and hands, and it makes her arms and fingers feel numb. (Id.). Claimant has trouble even holding her coffee cup in the mornings. (Id.). She also has swelling at the back of her neck and in her lower back. (R. 295-96). Claimant stated that she has numbness in her legs, especially in her right leg. (R. 296). Claimant has pain every day in varying degrees. (Id.). When the pain is bad, laying on a heating pad for 30 to 60 minutes several times during the days helps to alleviate some of the pain. (Id.). Claimant also wears a Durogesic Patch, takes one aspirin each day, and takes hot showers to help with the pain. (R. 297). The weather affects

5

Claimant's pain, as does frequent bending, standing in one place, and prolonged sitting. (Id.).

Claimant testified that she tries to do some chores around the house. (R. 298). She makes coffee, watches some of a news show, and then tries to vacuum. (Id.). Claimant can vacuum for about four or five minutes at a time before she needs to rest because of her pain. (Id.). Claimant rests for about fifteen minutes and then sometimes she can continue vacuuming. (Id.). Claimant's daughter visits her every two weeks to do the heavy dusting and cleaning. (R. 299). Claimant stated that she is able to drive for about 30 minutes at a time and goes to the library once every two weeks. (Id.). She also does some small grocery shopping like picking up butter or eggs, while her husband does the major grocery shopping. (Id.). The reason Claimant can only drive for about 30 minutes at a time is because her leg goes to sleep and then she can't feel the foot pedal. (R. 299-300). She also has trouble turning her head. (R. 300).

Claimant is able to stand for about 20 or 30 minutes at a time before the pain starts radiating through her legs and hips. (Id.). The pain feels like someone is jabbing a screwdriver between her vertebrae. (Id.). To alleviate the pain, Claimant must sit or lay down, with the best position being to lay down on a heating pad with her legs elevated on a pillow. (Id.). Between the hours of 9 a.m. and 5 p.m. Claimant usually lays down about three times for 30 minutes each time. (R. 301). Sitting does not relieve the pain, although walking around does help somewhat. (Id.).

Claimant testified that she is able to walk out to her mailbox and back. (Id.). When her pain is bad, Claimant uses a cane. (R. 302). Over the previous three months, Claimant stated that she had fallen three times. (Id.). Usually Claimant has to alternate

from sitting to standing about every 15 to 20 minutes, although on bad days, more often than that. (R. 303). Claimant is able to bend over and pick things up off the floor, but does not do it because it is painful. (Id.). If Claimant bends over or carries more than 10 pounds she regrets it because it will cause her a lot of pain. (R. 303-04). Claimant also has difficulty holding a pen to write because she has very little feeling in her fingers. (R. 304). Claimant testified that she does have a computer at her house and she is able to sit and use the computer for about 10-15 minutes at a time. (R. 305).

Claimant's pain has also affected her attention span. (Id.). Her mind wanders and she has difficulty thinking of certain words. (Id.). Claimant does not handle any of the bills, nor does she have an ATM card because of her forgetfulness. (Id.). Claimant stated she also experiences excruciating headaches every day. (Id.). Her doctors have told her that the headaches are not migraines, but are caused by stress and tension in her neck. (R. 306). When Claimant gets these headaches, she usually takes an aspirin and lays down to rest. (Id.). Claimant's doctors do not think that surgery is a good option because Claimant has problems with blood clots. (Id.). Claimant stated that when she had a hysterectomy three years ago, she had blood clots develop in her legs that moved to her lungs. (R. 307). Both Claimant's sister and father died from blood clots, and her mother has blood clots. (R. 307-08).

Over the previous year, Claimant testified that she has lost 60 pounds. (R. 307). This was not at her doctor's suggestion, but something Claimant did on her own. (Id.). The weight loss has not alleviated her pain, but it has helped her diabetes. (Id.). Claimant also stated that she has received steroid shots in her neck and back for her pain. (R. 308).

7

Claimant testified that since she stopped working three years ago, her condition has worsened. (Id.). When Claimant first quit working, it was due to problems she had with fibroid tumors prior to her hysterectomy. (Id.). Claimant stated that her problems really became disabling in April 2002, although she had some problems with her back and neck prior to that date. (R. 309).

B.   The Vocational Expert's Testimony at the Administrative Hearing

Sondra Henry testified as a VE at the administrative hearing. (R. 310-15). The VE described Claimant's past work from 1984-1988 as a dispatcher at the sheriff's department as sedentary work with a Specific Vocational Preparation (SVP) of 4 and Dictionary of Occupational Titles Code (DOT) of 379.362-010. (R. 310, 312). Claimant's other past work was also at the sedentary level. (R. 310). The ALJ then posed the following hypothetical:

> assume a hypothetical individual the same age as Mrs. Adkins with the same work background and education, maintaining the exertional capacity for sedentary work only with no climbing, crawling, balancing, exposure to hazards, no more than occasional kneeling, crouching and stooping, no constant repetitive neck motion required in the job and no constant repetitive fine manipulation bilaterally required. And finally, a sit/stand option at will with the flexibility to use a cane while walking and standing . . . . could that hypothetical individual do the prior work of a police dispatcher?

(R 310-11). The VE responded in the affirmative. (R. 311). Additionally, the VE stated that such an individual could perform the other occupations of surveillance systems monitor, which is sedentary, unskilled work with an SVP of 2 and DOT Code of 379.367-010 and dispatcher, which is sedentary, semi-skilled work, with an SVP of 3 and DOT Code of 239.367-014. (Id.). Both of these jobs existed in significant numbers in the local and national economies. (Id.). The VE stated that the hypothetical claimant would have

acquired certain transferable skills as a police dispatcher to enable her to do the work of a regular dispatcher, including answering phones, taking directions, giving information, and reporting necessary information about destinations. (R. 312). The VE also stated that her descriptions of these occupations were consistent with the DOT, with the exception of the sit/stand option, which was based on the VE's own observation of the job. (Id.).

The VE was also questioned by Claimant's attorney. (R. 313-15). The VE was asked whether the job of dispatcher would allow the hypothetical claimant to periodically walk around and leave the work station to relieve pain. (R. 313). The VE responded that the individual could likely walk about five to eight feet away from the work station, but would need to stay fairly close to answer incoming calls. (R. 313-14). If the hypothetical claimant needed to lay down for 30 minutes at a time, up to three time a day, the VE stated that both of the jobs previously identified, would be eliminated. (R. 315). Additionally, if Claimant's testimony regarding her limitations, including her difficultly with concentration, attention, and short term memory problems, were credited, both of the jobs previously identified would be eliminated. (Id.).

## IV. Pain and Credibility Assessment

Claimant argues that the ALJ improperly evaluated her credibility, including specifically her testimony about the disabling effects of her pain. The court agrees.

In assessing a claimant's credibility, the ALJ must follow a two step process. First the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). Next, the ALJ must evaluate the claimant's statements regarding those symptoms.

9

Id. at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p. When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. See Ivey v. Barnhart, 393 F.Supp.2d 387, 390 (E.D.N.C. 2005) (concluding that remand was appropriate because the ALJ failed to adequately explain the basis of his credibility determination).

Here, the ALJ began his credibility analysis by stating that "claimant's testimony is not entirely credible concerning the severity of her symptoms and the extent of her limitations." (R. 20). He then proceeded to discuss Claimant's medical records and the findings of certain medical tests. (R. 20-22). However, ALJ did not perform the first step of the credibility analysis–he did not assess whether Claimant's impairments would be capable of causing the pain alleged. Instead, he skipped on to the second step of the analysis and proceeded to discuss whether claimant's subjective complaints were credible.[1] This is precisely the error which required remand in Craig. 76 F.3d at 596. Accordingly, the ALJ failed to properly evaluate Claimant's credibility regarding her allegations of pain and the case should be remanded for a proper credibility assessment.

---

[1] Also troubling, the ALJ discounted Claimant's testimony regarding her limited ability to perform activities of daily living because it could not be "objectively verified with any reasonable degree of certainty." (R. 20). While objective medical evidence of a claimant's pain may be considered, the ALJ may not discredit a claimant's allegations of pain "solely because they are not substantiated by objective evidence of the pain itself or its severity." Craig, 76 F.3d at 595.

Because the court finds that remand is appropriate, it does not reach Claimant's other arguments.

## CONCLUSION

Accordingly, it is **RECOMMENDED** that Claimant's motion for judgment on the pleadings be **GRANTED**, defendant's motion for judgment on the pleadings be **DENIED**, and the case be remanded to the Commissioner for a rehearing consistent with this Memorandum and Recommendation. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This 15th day of November, 2007.

DAVID W. DANIEL
United States Magistrate Judge